Opinion delivered June 16, 1888.

---

## No. 6138.

### John Pool *v*. The State.

Horse Theft—Accomplice Evidence.—See the statement of the case for evidence *held* insufficient to support a conviction for horse theft, because it fails to corroborate the accomplice testimony upon which the conviction rests.

Appeal from the District Court of McCulloch. Tried below before the Hon. J. C. Randolph.

The conviction was for the theft of a horse, and the penalty assessed was a term of seven years in the penitentiary.

J. L. Vaughan was the first witness for the State. He testified that he lived in Coleman county, Texas. In the latter part of the fall of 1885, the witness put a number of his horses in the pasture of Mr. Starkweather, in Coleman county, which horses he and his employes afterwards looked after. Among those horses the witness thought, was a certain six or seven year old

gray pony, branded M on the left shoulder with a bar above and below, and with the pastern of one of his hind legs enlarged. Witness gave no person his consent to the taking of that horse.

Carothers, who is present at this trial as a witness, afterwards brought this horse to the witness. Its brand had been changed by adding two perpendicular bars, making a square around the M, and by running two bars across the M. The disfiguration was much fresher than the old brand and could be easily traced. He was a noted horse, well known in the neighborhood as "Old Slipper."

Reuben Carothers was the next witness for the State. He testified that he was in the employ of the witness, Vaughan, in 1885 and 1886. In the latter year he found the horse described in the indictment in the possession of the witness Willoughby. Witness knew that horse by his flesh marks and by his enlarged. pastern joint. He was known in the neighborhood as "Old Slipper." The said horse, with others belonging to Mr. Vaughan, was turned into Starkweather's pasture about November, 1885. Witness found the said horse in Willoughby's possession in May, 1886, made affidavit of ownership for Mr. Vaughan, and took the horse to Vaughan. The brand had been changed on the said horse in the manner stated by Vaughan in his testimony. Willoughby and the horse were in McCulloch county when witness found and recovered the horse.

E. E. Willoughby was the next witness for the State. He testified that in April, 1886, he bought from Horace Hunter, a witness in this case, the horse described in this indictment. That horse corresponded in description with the description of Vaughan's horse, as detailed by the previous witnesses in this case. Witness put the cross bars on the original brand after he bought the horse. The brand on the animal when witness got him was an M enclosed in a square. Reuben Carothers reclaimed that horse from witness as the property of J. L. Vaughan.

Horace Hunter was the next witness for the State. He testified that he lived with E. E. Willoughby in 1886, and lived with him now. In March, 1886, the witness met the defendant in Coleman county, about three miles from the Starkweather pasture, riding the horse described in the indictment. He was then branded with the letter M enclosed in a square. Witness and defendant then entered into negotiations which terminated in the defendant selling the said horse to witness for a saddle and thirty-five dollars. The two crossed the Colorado river to-

gether into McCulloch county, where the horse was delivered to witness. Witness then and there gave the defendant the saddle, and paid him ten dollars of the thirty-five that he agreed to pay. When witness bought the horse he remarked to defendant: "That looks like an M-bar brand horse." Defendant replied: "Pshaw! Do you think I'm a fool. Vaughan, who owns that brand, is my uncle." Witness did not observe that the brand had been changed recently. About a month later witness sold that horse to Willoughby.

Cross examined, this witness testified that he did not go into Coleman with the defendant to get the horse, nor did he at any time ever visit the Starkweather pasture with the defendant. He never saw the defendant but once before he made the trade with him for the horse, and that was two years ago, and he was then with him only long enough to cross the Colorado river. Witness paid defendant, at the time of the trade, only ten dollars of the stipulated money price of the horse, but afterwards, while defendant was in jail at Brady, he paid him ten dollars more, which was all the money he had ever paid. Witness was in jail once charged with theft of a cow, and once charged with the theft of a horse. Witness was horse hunting on the day that he met defendant and traded for the horse.

The State rested.

J. E. Dexter was the first witness for the defense. He testified that he had known the defendant for three years, and was satisfied in his own mind that defendant had a "screw loose somewhere," by which he meant that defendant's mind was not evenly balanced. Witness was unable to say whether or not defendant was capable of distinguishing right from wrong.

J. H. Pool, the defendant's father, testified, in his behalf, that from his childhood the defendant had exhibited symptoms of a deranged mind. His condition had been growing worse of late years, and witness was satisfied that at times he was not capable of distinguishing right from wrong. His conduct indicated an affection of the head. Often when witness would direct him to do a thing he would go off as though to do it, but would do another thing. At times he would sit pressing his forehead in his hands, apparently unconscious of what was passing around him. Witness once sent him to Brady on some business. Instead of going to Brady he went to Coleman, and forged the names of Starkweather & Bros. to a check.

Three or four witnesses testified, for the State, that they had

known defendant for several years, and that while they did not consider defendant even an ordinarily intelligent man, they believed that he knew right from wrong.

The motion for new trial raised the questions discussed in the opinion.

*Thomas & Burton*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

White, Presiding Judge. The only inculpatory evidence against defendant on the trial in the court below was that of the witness Horace Hunter, and his testimony raises a strong presumption that he was an accomplice or *particeps criminis* in the theft of the horse. If so, then we look in vain for any corroboration of his testimony. If he did in fact give defendant a saddle in part payment for the horse when he purchased him, doubtless the fact that defendant had such a saddle might at least have been proven by some one else.

We are of opinion the evidence as disclosed in this record is insufficient to support the conviction, and the judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*